GhicC Justice lioBEETso.Y,
delivered the opinion of the court.
Tins is a suit in chancery brought by M’Campholl and Lytle to lie relieved from usury charged to have been exacted from them by George Gill,in loans, by him to them, of commonwealth’s bank notes.
It appears from the bill and answer that, in 1823, Gill loaned to the plaintiffs in error $45 in commonwealth’s notes; in consequence of which, and of successive reloans and other “arrangements” growing out of them, he obtained a judgment against them in 1827, for $150 in specie, and costs.
The bill charges that, by reloans of principal and usurious interests; and by other artifices, Gill had enabled himself to obtain in 1826, judgments against the plaintiff for between $70 and $80; that, having procured executions of fieri facias to be issued to enforce these judgments, lie assured them that, if they' would suffer some copper stills andMlier apparatus for distilling, (belonging to M’Campbell, and with which he ivas about to commence distilling spirits,) to be levied on and sold, he (Gill) ijf'ould be more indulgent to them, than he had ever been, and would let M’Campbell retain the distillery, if he and Lytle would secure to him by a new note, the amount of the executions, and one hundred and twenty per cent on it; that accordingly the stills were sold, and were purchased by Gill’s sons for the amount of the execution, no other person bidding for them; that a few days after the sale, they applied to Gill for a fulfilment of his promise whereupon, he took their note for $150, which he assured them was intended only to secure to him theamountof the executions, and theone hundred and twenty per cent interest upon it. Thathe had *88 obtained a judgment, on ibis note, and was attempting to enforce it for the whole amount.
Chancellor will injoin illegal reservation of interest before execution is satisfied; after money is paid, he will, upon bill filed, decree restitution to the extent of the usury.
Gill admits, in his answer, that the original loan was 'only ,{¡45 in commonwealth's paper, as charged; but insists that the sale of the properly and the execution of the note for §150., exempt him from all liability for usury* He denies that he made any contract or arrangement with the plaintiffs as charged. Says that his son, as his agent, purchased the property at the sale for him, “bona fule,” and that the plaintiffs having applied to him to repurchase it, he sold it to them for ¿'150, believing that it was worth that much; and denies that he made any arrangement whatever with M4 Campbell, in relation to the stills &c. “previous to the sale” thereof,or that he sold the r,tills &c. to M’Camphell and Lytle to cover usury* And avers, that he made no “arrangements or promises to, or with said M’Campbell in relation to the property io be, sold, by which M’Camphell was to be secured from the effects and operations of the sale.
Thccircuitcourtdissolvedtlieinjundionwith damages and dismissed the bill with costs.
Only one deposition was filed, and’ that does not materially affect the case exhibited by the bill and aunver. If therefore, the answer can be construed as a negation of all the essential allegations of the bill, except such as charge the usury before tlie sale of the stills, &c. the plaintiffs in error would not be entitled to relief to the full extent sought by them. But even according to this aspect of the case, they would be entitled to relief, to the extent of all the usury exacted from them, and included in the judgment ,to satisfy which the stills, &c* were sold.
As the usury, admitted by the answer, was not pleaded to the action, the chancellor might have decreed relief, by injoining the judgment to the extent of illegal reservation, if a bill had been filed for that purpose before the execution was satisfied. After the judgment was discharged, the plaintiff in error had a right, liy bill in chancery, to demand restitution of all they had paid for usury. If instead of permitting property to be sold by execution, and giving their note for it, after it was purchased by Gill, they had executed their obligation, in discharge of the judgment, that bond would have been contaminated with the usury which tainted the *89 judgment, and the chancellor would have had the right to decree the same measure of just relief against the bond, as that which might have been proper against the judgment.
If original transactionbo usurious, the contamination extends to all subse-qiienttransac-tions, embracing and con-inning the first’
IF e^i^aid ^ may berecov-ered by bill in clia-noery.
Judge knows jadioiaHythat paper was no^ equal to specie-
If all the allegations of the bill, in relation to the execution of the note for §150, be untrue, still we are unable to perceive any sufficient reason for dissolving the injunction entirely. The usury is admitted; it has not yet been received by Gill. He has a judgment on a note, obtained in consequence of a previous judgment,' ■which was infected with usury. The parties to that first judgment, are the parties to the last. The usury has been virtually paid; but it was paid by a sale of property, for which the note for §150, was given. There is an obvious connexion between the consideration of the note for §150, and the first judgment. They have grown from the same root, and though an attempt has been made to sever them, the one is engrafted on the stock of the other, and must still be dependant upon it.
It would seem, therefore, more just and consistent, to grant relief, in this case, by a perpetuation of the injunc-iion for the usury, than to dissolve the injunction with damages, and compel the plaintiffs, after paying the money, to prosecute their suit to recover a part of it, as it must be conceded they would have an undeniable right to do.
But if it had even been right to dissolve the injunction, it was certainly not right to dismiss the bill. If the usury has been paid, (and that is as much as could be made of the case, to the prejudice of the plaintiffs,) it may be recovered by bill, in chancery.
The bill in this case, is sufficient for that purpose; why should that be dismissed? For another to be filed? That would be idle, besides it would be unavailing. This bill was dismissed absolutely; and therefore the decree;, in this case, would bar another suit for the usury.
There was no proof of the value of the original loan; but the circuit judge knew judicially that common-wealtfrs paper was not equivalent to specie. He saw that usury was admitted, and that, therefore the plaintiffs were entitled to a decree for something; he ought therefore to have ascertained the value of commonwealth’s paper, at the date of the original loan; *90 and, instead of dismissing the bill, have decreed the proper measure of relief.
When'the answer to the allegations of a bill is evasive and general, the conclusion must be against the answer, and the allegations taken as admitted, the facts being within the knowledge of the defendant.
But the plaintiffs were entitled to a decree, not only for the usury which had been exacted, but also, for the excess of the $150 note, the amount which was legally due to the defendant, on his first judgment.
The allegations of the bill, would, if they be true, justify relief to this extent. The answer is specious and general. But i t is just such an one as might be expected from an artful man, studious to evade a direct, and specific response to all the allegations of the bill, and to present an apparent answer to the whole of them, by general declarations containing no posititive falsehood*
The answer does not respond to the allegation, that the defendant assured the plaintiffs, that if they would allow the property to be sold, and him to purchase it, he would favor them more than ever. It only denies, in general terms, that he made any “arrangements or promises to, or with J\PCampbell,by which, M’Campbell tuus lo'be secured from the effects and operations of ike sale,.”
This may be all literally true, and nevertheless, he may have given the assurance charged in the bill. If he had intended to take any unreasonable advantage, he would not have been so incautious, as to make any specific arrangement, or direct promise, which would have frustrated his purpose. He would have given some indirect and vague intimation, such as that alleged in the bill, to have been made by him, sufficiently intelligible to lull and deceive the plaintiffs; but -not so plain or explicit, as to amount to a specific arrangement or promise, to secure M’Campbell from “the effects or operations of the sale.”
The answer is evidently drawn with great care. If no such assurance as that charged in the bill had been given, it would have been easy and natural for the defendant, to have said so explicitly. Why did he not say so? Why was he silent as to this allegation?” We do not feel at liberty to construe the answer otherwise, than as an admission that the defendant assured the plaintiffs, that if they would permit the stills, *5rc. to be sold, and purchased by him, he would be more favorable to them than ever.
This interpretation is fortified, by some considerations aliunde. 1st. Why, were the stills &c. though pre *91 pared for immediate use, giren up to be sold? Why did no person attend the sale or bid except the son of the defendant? Why, as the property had belonged to M’Campbell, did Gill permit it to remain with him,- and afterwards sell it, not to M’Campbell, but to him and Lytle? These things are all consistent with, and somewhat corroborative of the case exhibited in the bill; and are, in the same degree, inconsistent with that attempted to be made out in the answer.
Richardson, for plaintiffs; Denny and Triplett, for. defendant.
But there is a still more important allegation in the bill, which is not confronted by the answer.
It is the allegation, that when the note for $150, was given, the defendant agreed that it should secure only the amount of the execution, and one hundred and twenty, per cent interest upon it. The only part of the answer, that could be considered a response to this charge is, that “the sale was fair and bona file, and made on the terms before stated.” What those terms were, is unexplained, except by the general declaration, that the defendant gave up his legal right to the property, in consideration of the note for $150.
The defendant denies that he made any “arrangements” previous to the qale; but he does not directly deny that he made the-alleged assurances-after the sale. This allegation is therefore virtually admitted.
The consequence of these two constructive admissions, is that the sale and execution of the note for $150, were shifts resorted to for the purpose of evading the legal effects of the usury; and are parts of a series of devices whereby $15, in commonwealth’s notes, have been swelled to $150, in specie.
It is therefore our opinion, that the plaintiffs are entitled to a perpetuation of their injunction, to so much of the judgment, as is not constituted of the value of the original loan, and thejntermediate costs and six per cent accruing interest. Of course, the defendant is not entitled to the |;5, paid to him, for a suspension of his execution.
Wherefore, the decree of the circuit court is reversed and the cause remanded, with instructions to make such orders and decrees, as shall be necessary and proper to carry into effect the principles of this opinion.